**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROBERT BARCELON,

        Plaintiff,

vs.

ALBERT LEON HARRIS; LANDFORCE CORPORATION

        Defendants.

Case No.: 2:18-cv-01493-GMN-NJK

**ORDER**

Pending before the Court are Plaintiff Robert Barcelon's ("Plaintiff's") Motions in Limine ("MILs"), (ECF No. 109–117). Defendants Albert Leon Harris ("Harris") and Landforce Corporation ("Landforce") (collectively, "Defendants") filed Responses, (ECF Nos. 133–141).

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motions in Limine.

## I.   BACKGROUND

This case arises from injuries Plaintiff allegedly sustained in an automobile accident in Colorado. (*See* Compl., ECF No. 1). This Order concerns Plaintiff's pretrial Motions in Limine.

## II.   LEGAL STANDARD

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a). In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987) ("We have traditionally required that these matters [regarding

admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing FRE 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *see also Luce*, 469 U.S. at 41.

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

## III. DISCUSSION

### A. Plaintiff's MIL No. 1 to Preclude Statements or Argument that Plaintiff Was at Fault for the Accident

Plaintiff's First Motion in Limine essentially asks that the Court prevent Defendants from raising a comparative negligence defense at trial. (*See generally* MIL No. 1, ECF No. 109). Plaintiff does not provide a legal basis for excluding the defense; rather, Plaintiff asserts that the argument would be, "contrary to the facts of this case." (*Id.* 11:9–13). The argument is not properly raised by motion in limine.

Motions for summary judgment are the proper forum to litigate whether a dispute of fact exists before trial. *See* Fed. R. Civ. P. 56. Motions in limine, by contrast, should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc.*, 539 F. Supp. 2d at 323. As Plaintiff's first Motion in Limine asks the Court to resolve a factual dispute, the Motion is **DENIED**.

### B. Plaintiff's MIL No. 2 to Exclude Accident Causation Opinions of Responding State Trooper and any Other Opinions that are Within the Province of the Jury

Plaintiff's Second Motion in Limine requests that the Court exclude "accident causation opinions of responding state trooper and any other opinions that are within the province of the jury." (MIL No. 2 1:24–25, ECF No. 110). A state trooper, Joshua Gouker ("Gouker"), investigated the accident. (*Id.* 3:11–14). Based on his investigation, he completed a traffic accident report and later submitted to a deposition. (*Id.*). Specifically, Plaintiff seeks to exclude: (1) the traffic accident report; (2) Gouker's opinion that Plaintiff was attempting to pass Harris and that Plaintiff was in the "pass lane;" (3) Gouker's opinion of how the accident occurred as stated in the accident report's narrative statement; (4) Gouker's drawing of the accident; (5) the fact Gouker did not issue citations to either driver; and (6) Gouker's notation of "MO2," which indicated Harris exceeded a safe rate of speed. (*Id.* 5:15–26). Plaintiff contends that each is excludable either as hearsay or improper lay opinion testimony. (*Id.* 4:18–21).

Defendants seek to introduce both a redacted accident report and video of Gouker's deposition. (*See* Defs. Resp MIL No. 2, ECF No. 134).[1] Defendants argue that facts that were personally observed may properly come before the jury. (*Id.* 8:4–6). They also contend that, to the extent it contains admissible non-hearsay, the traffic report is admissible as a record kept in

---

[1] As Gouker is over 100 miles from the District, his deposition may be introduced as a substitute for live testimony. Fed. R. Civ. P. 32(a)(4)(B). Plaintiff does not dispute that Gouker's deposition may be offered as a substitute for live testimony.

the ordinary course of business. (*Id.*). Defendants agree to redact certain parts of the report and refrain from playing Gouker's deposition testimony relating to those redactions. (*Id.* 8:7–8, 8:20–21, 9:4–6). The Court begins its discussion with Plaintiff's specific objections before reaching the generalized objection to exclude the traffic accident report in full.

        i.     *Gouker's Opinion regarding Plaintiff's Attempt to Pass Harris and Plaintiff's Presence in the "Pass Lane"*

Plaintiff seeks to exclude Gouker's lay opinion testimony that Plaintiff attempted to pass Harris, and that Plaintiff was in the "pass lane," arguing that the testimony contains hearsay. (MIL No. 2 4:18–5:11, 5:16–18). Defendant argues that the testimony is not excludable because the information underlying the opinion "was personally observed." (Defs.' Resp. MIL No. 2 10:1–6).

Under FRE 701, a witness not testifying as an expert may provide opinion testimony if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Here, Gouker believes that Plaintiff attempted to pass Harris before the accident. (*See* Gouker Dep. 46:12–22, Ex. 2 to MIL No. 2, ECF No. 110-2). To form that opinion, Gouker separately interviewed both Plaintiff and Harris at the accident site. (*Id.* 38:3–22). Gouker asked Plaintiff and Harris to estimate their speeds. (*Id.*). Plaintiff estimated he was traveling 25 MPH, and Harris estimated he was traveling 15 MPH. (*Id.*). Based on the parties' representations, Gouker explained he believed Plaintiff was attempting to pass Harris. (*Id.* 46:12–22).

Gouker's opinion is inadmissible. Under FRE 701, lay opinion testimony must be based on the witness's own perception, not the perception of others. Here, in contrast, Gouker based his opinion on the parties' statements; he was not present when the accident occurred. Even if

the opinion were otherwise admissible, it would not aid the jury because the jurors could draw their own opinions from the parties' estimates of their own speeds. Therefore, the Court **GRANTS** Plaintiff's request to exclude Gouker's opinion testimony regarding Plaintiff's alleged attempt to pass Harris.

Likewise, Defendants may not offer Gouker's deposition testimony that Plaintiff occupied the "passing lane." (Gouker Dep. 4:18–22). While the left lane is supposed to be used to pass slower vehicles, Gouker's language implies the opinion that Plaintiff was in the left lane to pass Harris. Gouker formed the opinion based on his interviews with the parties. (*Id.*). The Court finds that the description is an opinion not based on Gouker's perception, and the statement should not be offered to the jury.[2]

        ii.        *Gouker's Opinion of How the Accident Occurred, Including the Narrative Report*

Defendants agree to redact the narrative statement regarding how the accident occurred. (Defs.' Resp. 8:7–8). There does not appear to be any other opinion in the accident report regarding how the accident occurred. (*See* Ex. 1 to MIL No. 2, ECF No. 110-1). The Court's above discussion has already addressed Plaintiff's objection to Gouker's deposition testimony of how the accident occurred.

        iii.        *Gouker's Traffic Diagram*

Defendants agree to redact the traffic diagram drawn in Gouker's accident report. (Defs.' Resp. 8:20–21). Given Defendants' non-opposition, the Court grants Plaintiff's request to exclude the diagram.

---

[2] However, with respect to the lanes Plaintiff and Harris occupied, Gouker's deposition contains statements that are not opinion. Gouker testified that Harris indicated he was in the right lane, and Plaintiff indicated he was in the left lane. (Gouker Dep. 42:7–14, 45:11–16). Because Plaintiff and Harris's statements are out of court statements that may be offered for the truth of the matters asserted, they are hearsay unless an exception or exclusion applies. Plaintiff's statement—as described within Gouker's testimony—is likely a non hearsay statement of a party opponent under FRE 801(d)(2) if offered by Harris, but Gouker's testimony about Harris's statement may qualify as hearsay if offered by Defendants.

### iv. *Gouker's Abstention from Issuing Citations*

Plaintiff asks that the Court preclude introduction of Gouker's deposition testimony that Gouker did not issue either driver a citation. (Pl.'s MIL No. 2 4:18–5:12, 5:23–24). Plaintiff bases his objection on one Arizona state court case that likened the presence or absence of a citation to an opinion. (*Id.*). The Court disagrees and finds that the presence or absence of a citation is an issue of fact, and therefore FRE 701 does not provide a basis for excluding the testimony. *See, e.g.*, *McQuiston v. Helms*, No. 1:06-cv-LMJ-DML, 2009 U.S. Dist. LEXIS 19141, 2009 WL 554101, at *5 (S.D. Ind. Mar. 4, 2009) ("Officer Carnell's nonissuance of a citation to Helms is merely a fact, and not an opinion, about which Officer Carnell is entitled to testify."). To the extent the presence or absence of a citation is relevant to the lawfulness of Harris's driving, Plaintiff had the opportunity to cross-examine Gouker to undermine its probative value.

### v. *Gouker's MO2 Notation*

Defendants agree to both redact the MO2 notation and not to play Gouker's testimony on the subject. (*See* Defs.' Resp. MIL No. 2 8:7–12). Accordingly, given Defendants' non-opposition, the Court grants Plaintiff's request to exclude introduction of or testimony about the notation.

### vi. *Traffic Accident Report*

The Court finds that the remainder of the traffic accident report, which includes facts personally observed by Gouker at the scene, including the street, vehicles, persons involved, and the weather, is likely admissible. If Defendants can lay proper foundation that the report was prepared in the ordinary course of Gouker's duties, then his personal observations contained therein are likely admissible. *See* FRE 803(8); *see also Neumeyer v. Wawanesa Gen. Ins. Co.*, No. 14cv181-MMA, 2015 U.S. Dist. LEXIS 59024, 2015 WL 1924981, at *23 (S.D.

Cal. Apr. 24, 2015); *Winterrowd v. Nelson*, No. 3:02-cv-00097, 2009 U.S. Dist. LEXIS 147703, at *13–14 (D. Alaska June 19, 2009).

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Second Motion in Limine.

### C. Plaintiff's MILs No. 3–4, Seeking to Preclude Certain Defenses

Like Plaintiff's first Motion in Limine, Plaintiff again tries to assert that its evidence is so overwhelmingly persuasive in rebutting Defendants' proffered defenses[3] that Defendants should not be able to present argument to the contrary. (*See generally* MIL Nos. 3–4, ECF No. 111). Also like Plaintiff's first Motion in Limine, the Motions do not cite a rule of evidence or otherwise articulate an evidentiary objection. (*Id.*). The factual argument is not properly raised in the Motions in Limine. It instead should have been resolved through a motion for summary judgment, if ever, before trial. Defendants may present their defenses, and Plaintiff may attempt to raise cognizable evidentiary objections to evidence in support thereof at trial. The Motions are therefore **DENIED**.

### D. Plaintiff's MILs No. 5–7 to Preclude Clive M. Segil, M.D., F.R.C.S., F.A.C.S., from Giving Specified Expert Medical Opinions

Plaintiff objects to potential opinion testimony from Dr. Segil ("Segil"), including that: (1) Plaintiff does not need surgery; (2) Plaintiff's neck symptoms arise from his chronic degenerative disc disease rather than the accident; and (3) Plaintiff's past and future medical special damages request is unreasonable and/or excessive. (*See* MILs No. 5–7, ECF No. 113–15). Each objection concerns whether Defendants have met the prerequisites for having Segil testify as an expert under FRE 702.

---

[3] Plaintiff seeks to preclude argument about whether Plaintiff sustained injury to the neck, upper back, mid-back, and forearm from the accident, (MIL No. 3), and that Plaintiff's past medical care was not reasonable, necessary, and related to the accident, (MIL No. 4).

The Court's "gatekeeping" obligation concerning admission of expert testimony derives from standards set by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 (1993). In broad terms, these standards require that the party intending to offer expert testimony show by a preponderance of the evidence that the expert possesses the qualifications and experience to render the expert opinion, that the opinion offered has adequate support for the conclusions and analysis, and that "the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 588–90; Fed. R. Evid. 702(a).

The Court addresses each objection to Segil's opinion testimony in turn.

### i. *Need for Surgery*

Plaintiff argues that the Court should preclude Segil from providing his opinion that Plaintiff does not need surgery. (*See* MIL No. 5, ECF No. 113). Plaintiff contends that: (1) Segil provides no foundation for his opinion that Plaintiff does not need surgery or is not a surgical candidate; (2) Segil's opinions are not stated to "a reasonable degree of medical certainty;" and (3) given the lack of proper foundation, the opinion will not aid the trier of fact.[4] (*Id.* 4:15–5:3).

In his Report, Segil opines, "I do not believe [Plaintiff] is a surgical candidate." (Segil Expert Report at 15, Ex. 1 to MIL No. 5, ECF No. 113-1). He explains that Plaintiff's pain management treatment has provided temporary relief for all his symptoms related to the accident. (*Id.*). He concludes that he has "recovered sufficiently from his neck sprain, upper mid back sprain and left forearm sprain," and that "[f]urther treatment may be conservative," employing over the counter anti-inflammatory medication and "vigorous exercise . . . to strengthen muscles of his neck, and his upper back and left arm." (*Id.*). Segil also highlights

---

[4] Because the third objection presupposes lack of foundation, the Court construes the first and third objections as equivalents.

that Plaintiff received back surgery prior to the accident, but it has "been of no major value as his pain has recurred." (*Id.*).

The Court first addresses Plaintiff's contention that Segil's opinion must be stated to a reasonable degree of medical certainty before considering Plaintiff's more generalized foundation objection. Plaintiff contends that because Segil uses "may" to frame his opinion, his opinion is excludable because it is uncertain. Plaintiff misstates the applicable legal standard. Plaintiff relies on *Guam v. Reyes*, 879 F.2d 646 (9th Cir. 1989) for the proposition. However, the Ninth Circuit explicitly noted that it did *not* hold a reasonable degree of medical certainty was required to admit expert medical opinion testimony. *Id.* at 649 ("We have never had occasion to decide whether expert testimony on causation in the context of a criminal trial must be based on a reasonable degree of medical certainty. We need not decide this issue now[.]"). Furthermore, the Court confined its analysis regarding the requisite degree of certainty to causation in criminal cases. *Id.* Here, Defendants need only establish that Segil's testimony complies with the foundation requirements of FRE 702 and *Daubert* by a preponderance of the evidence. *United States v. Rincon*, 28 F.3d 921, 923 (9th Cir. 1994). Once foundation is established, the witness's degree of certainty goes to the weight of the evidence, rather than its admissibility. *Cf. United States v. Cyphers*, 553 F.2d 1064, 1072–73 (7th Cir. 1977).

However, the Court agrees that Defendants have not yet laid the proper foundation for the reliability of Segil's opinion, but the proper foundation may be provided at a *Daubert* hearing. Medical expert opinion testimony is treated as a technical opinion under *Daubert*. *United States v. Sandoval-Mendoza*, 472 F.3d 645, 656 (9th Cir. 2006). "When evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526

U.S. 137, 150 (1999). "A trial court should admit medical expert testimony if physicians would accept it as useful and reliable." *Id.*

Here, the Court finds that Segil has the requisite experience to likely provide foundation. Segil is a board-certified orthopedic surgeon who has completed a fellowship in spine surgery. (Segil CV, Ex. G to Defs.' Resp. MIL No. 5, ECF No. 137-4). He has worked in orthopedic practice since 1975. (*Id.*). However, Segil's report does not explain why physicians would consider his opinion useful and reliable. So long as Defendants can lay the proper foundation, Segil's opinion will likely prove admissible. As the Court does not find that Defendants will be unable to admit Segil's testimony, the Court **DENIES** Plaintiff's Fifth Motion in Limine.

### ii. Origin of Neck Symptoms

Plaintiff seeks to preclude Segil from testifying that Plaintiff's preexisting degenerative disc disease is the cause of Plaintiff's neck pain. (MIL No. 6 1:23–27, ECF No. 114). Plaintiff argues that the opinion is not stated to a reasonable degree of medical certainty because the report states it conditionally,[5] and that it should be excluded under FRE 403 because the low probative value of the conditional statement is outweighed by the risk of misleading the jury. The Court has already explained that expert medical opinions need not be stated to a reasonable degree of medical certainty to be admissible. Likewise, given that the potential testimony concerns causation and damages, which are in issue, and Plaintiff has not specifically identified the prejudice that would result from the opinion's admission, the Court finds Plaintiff's 403 objection unpersuasive. Therefore, the Court **DENIES** Plaintiff's Sixth Motion in Limine.

### iii. Reasonability of Medical Special Damages

Plaintiff moves to preclude Segil from opining that Plaintiff's past and future medical special damages are unreasonable and/or excessive. (MIL No. 7 1:23–27, ECF No. 115).

---

[5] In his report, Segil opines that Plaintiff suffered injury to his neck in this case, but that Plaintiff "may" have "longstanding chronic degenerative disc disease in the cervical spine," which would be the cause of any future medical treatment needs. (*See* Segil Expert Report at 11, Ex. 4 to MIL No. 6, ECF No. 114-4).

Plaintiff argues that the opinion lacks foundation because it is based upon the total cost of Plaintiff's medical treatment, not the amount billed to him. (*Id.* 4:7–12). Plaintiff also argues that because the statement is not framed about the expenses being "usual or customary within the locality in which the medical treatment is provided," it would not be admissible. (*Id.* 4:12–17). Defendants respond that there is adequate foundation because they object only to the claimed medical expenses in Plaintiff's computation of damages, and Segil's opinion will aid the jury in assessing whether the costs are "usual and customary" in Nevada. (*Id.* 9:6–10:6).

If Segil's testimony will concern the claimed damages, Plaintiff's first foundation objection is without merit. However, for the opinion to be admissible, Segil will need to make a proffer regarding his knowledge of usual and customary medical treatment in Nevada. Given that the Court cannot say at this stage of the proceedings that the opinion will be inadmissible, Plaintiff's Seventh Motion in Limine is **DENIED**.

### E. Plaintiff's MIL No. 8 to Preclude Defendants' Expert Andrew Kim, D.O., From Giving Opinions Regarding Spine Surgery

Plaintiff argues that the Court should preclude Dr. Kim's testimony regarding Plaintiff's need for cervical fusion surgery arising from the accident because Dr. Kim is not an orthopedic spine surgeon and therefore does not have the requisite knowledge, skill, experience, training, or education to offer the opinion. (MIL No. 8 5:12–27, ECF No. 116). Defendants respond that Dr. Kim is qualified to provide the opinion because he is board certified in pain management, physical medicine, and is board eligible in electrodiagnostic medicine. (Defs.' Resp. MIL No. 8, ECF No. 140). Additionally, Dr. Kim has training in spinal diagnostics. (*See* Dr. Kim CV, Ex. D to Defs.' Resp. MIL No. 8, ECF No. 140-5). The Court finds that Dr. Kim is likely qualified as an expert to render the opinion. Dr. Kim's training in spinal diagnostics likely qualifies him to render an opinion on Plaintiff's need for spine surgery, provided Defendants can lay the proper foundation. While Dr. Kim is not a spine surgeon himself, any training Dr.

Kim lacks beyond the foundational minimum goes to the weight, rather than the admissibility, of the opinion. Therefore, Plaintiff's Eighth Motion in Limine is **DENIED**.

### F. Plaintiff's MIL No. 9 to Exclude Defendants' Expert Tamera Rockholt, RN, BSN, from Giving Testimony at Trial

Plaintiff seeks to exclude Rockholt's testimony regarding Plaintiff's medical special damages, arguing: (1) the testimony is irrelevant; (2) it is inadmissible as a violation of the collateral source rule; (3) Rockholt is not qualified as an expert; and (4) Rockhold uses improper methodology to reach her conclusion. (*See* MIL No. 9, ECF No. 117). The Court addresses each objection in turn.

#### i. *Relevance*

Plaintiff seeks to preclude Rockholt's testimony regarding Plaintiff's medical special damages request. (*See* MIL No. 9 3:17–6:18). Plaintiff objects to Rockholt's methods of calculation, arguing that her methods are "irrelevant." (*Id.*).

Plaintiff seems to misunderstand the evidentiary meaning of "irrelevant." In the evidentiary context, "relevance" is the tendency to make a fact of consequence more or less likely. *See* Fed. R. Evid. 401. Even if Rockholt's methodology is imperfect, her testimony has the tendency to undermine that Plaintiff's claimed damages are usual and customary in the treating jurisdiction. Therefore, Rockholt's potential testimony is undoubtedly relevant.

#### ii. *Collateral Source Rule*

Plaintiff argues that the proposed testimony violates the collateral source rule. (*See* MIL No. 9 3:17–6:18). Under the collateral source rule, the trial court may not admit evidence of the amounts paid by a collateral source to an injured party. *See Wal-Mart Stores, Inc. v. Cossgrove*, 276 P.3d 562, 564–65 (Colo. 2012). The rule also bars "the admission of the amounts paid for medical services" even if the amounts are offered as evidence that the claimed damages represent the reasonable value of the medical services rendered. *Id.* at 567. The

Colorado Supreme Court has explained, "[a]dmitting amounts paid evidence for any purpose, including the purpose of determining reasonable value, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source -- most commonly an insurer -- from the evidence, and thereby improperly diminish the plaintiff's damages award."

Here, Defendants do not seek to introduce any amounts an insurer has paid for Plaintiff's medical treatment. Rather, Rockholt will purportedly offer opinion testimony regarding the value of the medical services Plaintiff has received. (Defs.' Resp. MIL No. 9 9:15–10:28). So long as Rockholt does not reference the amount an insurer has paid or reasonably would pay for the services, Rockholt's testimony is not objectionable.

Plaintiff objects that Rockholt's use of medical billing codes violates the collateral source rule because insurers use the codes to identify medical services and procedures when processing claims for payment. (*See* MIL No. 9 3:17–6:18). The relationship between the codes and the insurance industry is not sufficient to preclude the testimony, and Colorado district courts have reached the same conclusion. *See, e.g.*, *Rainey v. Hernandez*, 2018 CV 32333, 2019 Colo. Dist. LEXIS 2053, at *24–*25 (Colo. Dist. Ct. Sept. 30, 2019) ("Although it may be true that CPT codes were developed to assist the insurance industry in processing and paying medical bills, the implementation of these codes upon which both plaintiff's healthcare providers and defendant's expert rely may be explained without reference to insurance companies."); *Dotson v. Rojo*, 2017 CV 31460, 2018 Colo. Dist. LEXIS 4079, at *3–*4 (Colo. Dist. Ct. Aug. 27, 2018) ("The Motion to Strike's collateral source argument found no support at the hearing. Her testimony indicated that the databases [employing CPT codes] include only the amounts billed to a patient. No evidence was presented that the billed amounts are reduced by any collateral source."). Rockholt may testify about medical billings codes without reference to medical insurance.

### iii. Rockholt's Qualifications and Methodology

Plaintiff offers little explanation for his objection to Rockholt's testimony beyond its relevance and purported violation of the collateral source rule. (*See* MIL No. 9 3:17–6:18). However, Plaintiff's Motion also concerns Rockholt's qualifications as an expert and the reliability of her methodology. To the extent Plaintiff's Motion in Limine raises a cognizable *Daubert* objection, the Court finds that Rockholt is likely qualified as an expert but that she need lay greater foundation to show her methodology is reliable and has been reliably applied to the facts of the case.

#### 1. Qualifications

Plaintiff explains that Rockholt is a registered nurse in Oregon, and "there is no evidence Ms. Rockholt is familiar with medical billing in Southern Nevada or that she has used Southern Nevada medical billing as a basis for formulating her opinions." (MIL No. 9 3:9–11). Plaintiff has not explained any unique aspect of medical billing in Southern Nevada that Ms. Rockholt would not know, but Defendants have provided evidence that Rockholt is qualified as an expert in medical billing.

Rockholt began her career as a nurse in 1977. (*See* Rockholt CV, Ex. B to Defs.' Resp. MIL No. 9, ECF No. 141-3). In 1990, she received training as a hospital bill auditor. (*Id.*). She then worked as a registered nurse auditor throughout the Northwest United States from December of 1990 to January of 1995. (*Id.*). She has worked as a medical bill auditor for insurers, the Federal Bureau of Investigations, Los Angeles County, and the California Department of Justice. (*Id*). Several Nevada state trial courts have found that Rockholt is qualified to testify as a medical billing expert in the state. (Rockholt Testimonial History, Ex. H to Defs.' Resp. MIL No. 9, ECF No. 141-9). Given Rockholt's extensive experience in auditing medical bills, the absence of any indicia that her general skill set is inapplicable to Southern Nevada, and the persuasive findings of other courts in Nevada that have found her

qualified as an expert, the Court finds that Rockholt is likely qualified to testify as a medical billing expert in this case.

### 2. Methodology

Plaintiff challenges three of the sources or methods that Rockholt uses to assess the reasonableness of Plaintiff's claimed medical special damages. (*See generally* MIL No. 9, ECF No. 117). First, Plaintiff disputes Rockholt's reliance on the Current Procedural Terminology ("CPT") to determine the reasonable amount billed for each service rendered to Plaintiff. (*Id.* 3:15–5:4). Second, Plaintiff objects to Rockholt's use of the Diagnosis Related Group ("DRG") to determine the reasonable cost of inpatient services provided to Plaintiff. (*Id.* 5:5–12). And, third, Plaintiff objects to Rockholt's use of a Relative Value Survey ("RVS") to quantify the value of the services for which Plaintiff has been billed. (*Id.* 5:13–6:3). The Court has already addressed the objections Plaintiff raised to each source or method—their relevance and relationship to the collateral source rule.[6] The Court's below discussion addresses Plaintiff's remaining objections, which concern the CPT codes Rockholt determined corresponded to reasonable services and how Rockholt used those codes to quantify the value of the reasonable services through RVS databases.

Plaintiff argues that Rockholt "presumably" compares the CPT codes in Plaintiff's medical bills and billing statements to the amount insurers pay for the services. (MIL No. 9 3:23–4:4). Plaintiff also argues that Rockholt impermissibly excludes Plaintiff's medical

---

[6] Plaintiff's sole objection to the DRG calculation is that DRG is a method Medicare uses to pay claims to medical providers, and testimony to that affect will violate the collateral source rule. (MIL No. 9 5:7–12). Likewise, Plaintiff's only objection to Rockholt's use of RVS is that Medicare and private health insurers also utilize RVS to determine reimbursement for cost of care. (*Id.* 5:17–6:3). Neither method necessitates reference to insurers. DRG is a method for determining reasonable costs for inpatient hospital services. (Rockholt Report at 000039, Ex. E to Defs.' Resp. to MIL No. 9). RVS is a commonly used method to calculate the reasonable value for medical services rendered, by CPT code, which can be sorted by zip code. Both are relevant because they have the tendency to show the value of the services billed, and RVS can provide indicia of the value in Southern Nevada, specifically. Therefore, for the reasons already discussed Rockholt's testimony is permissible under the collateral source rule as long as it will not discuss payment by insurers.

expenses from allegedly inaccurate CPT codes. (*Id.* 4:4–5). Finally, Plaintiff argues that Rockholt impermissibly gives her medical opinion about the care which is related to the accident. (*Id.* 4:5–8).

The Court finds that there is not yet sufficient foundation to support the reliability of Rockholt's methodology. Rockholt does not clearly explain her methodology in her report. Rockholt's report explains the different industry billing systems that she considers in her report, but not how she has used them to reach her conclusions. (*See* Rockholt Report at 000037–40, Ex. E to Defs.' Resp. MIL No. 9). In their Response, Defendants attempt to stitch together Rockholt's methodology for her. (*See* Defs.' Resp. MIL No. 9 8:13–11:2) (citing non-consecutive page numbers to support inferences about how Rockholt likely completed her report). Defendants' explanation indicates that instead of looking to what insurers generally pay for the services, Rockholt can pinpoint what physicians actually charge for the services in a given locality by employing RVS databases that organize charges for services by CPT code. (*Id.*). Although Defendants' explanation may be correct, proper foundation must be laid before Rockholt's opinions are admitted at trial.

More specifically, the Court is concerned that Rockholt improperly excludes some services from her reasonable cost estimate. There are some indicia that Rockholt's estimate considers her own opinion about the relationship between the services rendered and the accident. For example, with respect to services by provided the Nevada Comprehensive Pain Center, she asserts "[t]hese services were not related to the injury in question." (*Id.* at 000035). Her summary does not provide explanation for the opinion. (*Id.*). Without an adequate proffer, Rockholt's testimony about the relationship between the need for service and the accident may constitute medical opinion testimony she is not qualified to offer.

Additionally, the Court finds potential merit to Plaintiff's argument that Rockholt has impermissibly removed entire services from her usual and customary billing estimate because

an insurer would not pay for the services. Rockholt "disallowed" services from her calculation if the provider billed for the services but failed to provide adequate records to support the relevant CPT codes associated with the services. (*Id.* at 000033, 000044); (*see also* Defs.' Resp. MIL No. 9 8:24–9:10) (explaining that despite Plaintiff being billed $135 for an x-ray on 06/13/17, Rockholt estimated the value of the service at $0 because the provider did not provide a separate report indicating that an x-ray was administered). Rockholt explains that providers must use the proper CPT codes and document the services rendered under those codes in order to be reimbursed by federal medical insurers. (Rockholt Report at 000038, Ex. E to Defs.' Resp. MIL No. 9). The Court understands why a federal insurer may not pay a charge without adequate documentation. However, under Colorado law, the measure of damages is, "the necessary and reasonable value of the [medical] services rendered," without regard for the amount an insurer will ultimately pay for the services.[7] *Kendall v. Hargrave*, 349 P.2d 993, 994 (Colo. 1960) (as abrogated by *Wal-Mart Stores, Inc.*, 276 P.3d at 567). If Plaintiff's providers performed the services and billed for those services—but failed to either provide the correct CPT code or requisite supporting documentation—the providers' error seems to impact whether the services will be reimbursed, but not whether Plaintiff requests reasonable damages for the services rendered. Accordingly, the Court is not convinced that Rockholt's damages calculation applies a reliable methodology to the facts of this case.

If, as the Court suspects, Rockholt does not properly estimate the value for all medical services related to the accident, then her entire report is likely unreliable. If Defendants cannot obviate the Court's concern with foundation testimony and/or an updated calculation, the Court will not allow Rockholt to testify as an expert.

---

[7] Otherwise, the opinion may run afoul of the collateral source rule.

Plaintiff concludes his Motion in Limine with one final argument regarding Rockholt's ability to testify as an expert that is of concern to the Court. Plaintiff argues, "the Nevada Supreme Court affirmed a Clark County District Court order striking Ms. Rockholt as a medical billing expert based on one or more of the following reasons: (1) she was not qualified to provide an expert opinion on medical billing, (2) her opinion would not be helpful to the jury, and/or (3) her opinion implicated the collateral source rule." (MIL No. 9 6:8–12) (citing *Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 267, 396 P.3d 783, 788 (Nev. 2017)). The finding would be significant if true because Rockholt seeks to offer substantially similar testimony in this case.

However, Plaintiff's synopsis of *Pizarro-Ortega* plays fast and loose with the use of "affirmed," and his explanation is inaccurate. In *Pizarro-Ortega*, the trial court ordered Rockholt's testimony stricken but allowed a different expert witness to read Rockholt's expert report to the jury. *Pizzaro-Ortega*, 396 P.3d at 789. The Nevada Supreme Court considered whether striking Rockholt's testimony was an error that warranted a new trial. *Id.* The Court could not discern the basis for striking the testimony but explained that it would have been for one of the reasons Plaintiff cites in his present Motion. *Id.* The Court did not conclude whether the trial court abused its discretion by striking Rockholt's testimony. *Id.* ("we cannot determine from the record whether the district court properly exercised its discretion in excluding Nurse Rockholt under any of the three aforementioned reasons."). Rather, it explained that even if striking Rockholt's testimony was in error, the error did not provide a sufficient basis to order a new trial because reading Rockholt's report to the jury prevented the purported error from materially affecting the appellant's substantial rights. *Id.* Therefore, Plaintiff's argument that

the Nevada Supreme Court "affirmed" that Rockholt could not offer medical billing expert testimony is plainly incorrect.[8]

For the forgoing reasons, the Court is not assured that Rockholt's testimony will be admissible. However, because Plaintiff has not shown that her testimony will be inadmissible on all potential grounds, Plaintiff's Ninth Motion in Limine is **DENIED**.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion in Limine No. 1, (ECF No. 109), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 2, (ECF No. 110), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 3, (ECF No. 111), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 4, (ECF No. 112), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 5, (ECF No. 113), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 6, (ECF No. 114), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 7, (ECF No. 115), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 8, (ECF No. 116), is **DENIED**.

---

[8] Had the Nevada Supreme Court *actually* affirmed the trial court's conclusion that Rockholt could not testify as a medical billing expert, it likely would have been Plaintiff's first argument in the Motion in Limine, not the last. Counsel's attempt to deemphasize the position suggests that he may have knowingly misconstrued the case's holding. Although the Court is unsure whether Counsel has violated his duty of candor to the Court or just hastily read the case, either answer is concerning.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine No. 9, (ECF No. 117), is **DENIED**.

Dated this 1st day of June, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT